Argued and submitted May 23, affirmed December 17, 1986

O'HOLLAREN,
*Respondent,*

*v.*

MARINE COOKS
& STEWARDS UNION et al,
*Appellants.*

(8402-00748; CA A36259)

730 P2d 616

James S. Coon, Portland, argued the cause for appellants.

With him on the brief was Aitchison, Imperati, Paull, Barnett & Sherwood, Portland.

J. Patrick O'Malley, Portland, argued the cause for respondent. With him on the brief was Meyer, O'Malley & Vial, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiff brought this action for damages for breach of contract and for attorney fees for violation of the wage claim statutes. ORS 652.200. The trial court entered summary judgment for plaintiff. We affirm.

In 1976, plaintiff and her supervisor, Fast, were employed by the Marine Engineers Beneficial Association, a union. The Marine Cooks & Stewards Union was closing its Portland office and arranged with plaintiff and Fast to continue some of the union operations. The union agreed to pay plaintiff $100 a week, $25 of which was to be withheld and paid on termination of her employment.

In 1978, Marine Cooks merged with Seafarers International Union. Assets and liabilities were pooled, as well as employment benefit plans. When plaintiff was terminated from employment in February, 1981, the union took the position that the original agreement to withhold $25 per week had been modified after the merger when plaintiff became a participant in Seafarers' pension and benefit plans, and so it paid her only $1,554.72. If the employment agreement continued after the merger, she was entitled to approximately $5,000.

Defendants' first argument is that jurisdiction is exclusively in federal court, because plaintiff's common law claim for breach of contract has been pre-empted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC § 1001 *et seq,* which was designed to provide exclusive federal regulation of employe benefit plans. The act does pre-empt state law relating to employe pension and benefit plans. 29 USC § 1144.

The terms "employee welfare benefit plan" and "welfare plan" are defined in the act as:

"(1)  * * * any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death

or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

"* * * * *

"(3)  The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 USC § 1002.

Defendants contend that the agreement here was for severance pay, which constitutes an "employer welfare plan" within the coverage of ERISA, relying primarily on *Scott v. Gulf Oil Corp.,* 754 F2d 1499 (9th Cir 1985). In *Scott,* employes of Gulf Oil alleged that the company promised to pay severance pay at the rate of two weeks salary for each year of employment. The court held that the arrangement was an employe welfare plan subject to ERISA. Defendants argue that the $25 a week here was likewise a severance plan subject to federal jurisdiction.

■    The arrangement here was for wages, not "severance pay." Marine Cooks agreed to pay plaintiff $100 each week but to withhold $25 of that weekly until termination. In *Scott,* Gulf Oil promised to provide compensation *in addition to* wages. Here, the $25 was part of plaintiff's wages, and the arrangement was one for deferred compensation.

■    Deferred compensation *is* covered by ERISA *if* it is a "plan." Defendants argue that a "plan" does not require a written instrument to fall within ERISA coverage, *see Scott v. Gulf Oil Corp., supra,* 754 F2d at 1503, and that plaintiff's allegations here are sufficient to "ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham,* 688 F2d 1367, 1373 (11th Cir 1982). However, here there is no class of beneficiaries. The arrangement covered only plaintiff.[1]

Individual employment contracts are not "plans"

---

[1] Fast was hired by Marine Cooks under an agreement that his $100 a week would be entirely deferred until his termination. Defendants have not argued that the two agreements together constitute a "plan."

within the meaning or purpose of ERISA, which was enacted because of the rapid growth in employe benefit plans, *see* 29 USC § 1001, and the concern of Congress to protect employes from abuses in administration of those benefit plans. *See Donovan v. Dillingham, supra,* 688 F2d at 1370.

The issue of what constitutes a plan under ERISA was addressed by Goodman and Stone, "Exempt Compensation Arrangements Under ERISA," 28 Cath L Rev 445, 452 (1979):

> "In determining whether [a deferred compensation] arrangement constitutes an employee benefit plan for purposes of Title I, however, the most difficult questions arise when attempting to qualify an arrangement as a 'plan, fund, or program' within the meaning of the Act. In particular, there is a problem in deciding whether an arrangement benefitting only one employee is, or could under certain circumstances be, an employee benefit plan. This problem frequently arises in two situations. In the first, an employer and an individual employee negotiate a contract providing the employee with deferred compensation. * * *

> "It seems relatively certain that there is no employee benefit plan in the first situation. The Department of Labor has indicated clearly that the provision of pension benefits to an employee pursuant to an individual employment contract is not an employee pension benefit plan and, therefore, cannot constitute an employee benefit plan for purposes of ERISA." (Footnotes omitted.)

Plaintiff's claim was not pre-empted by ERISA.

■ Defendants next assign error to the trial court's granting summary judgment to plaintiff. Defendants argue that there is a material issue of fact as to whether the parties intended a novation of the original agreement when the unions merged. However, there is no evidence in the record which puts that issue in dispute.

Defendants rely on a letter of September 9, 1980, sent to plaintiff, which outlines the union's pension plan benefits, and plaintiff's signing, on October 15, a designation of beneficiary for insurance provided by the union. Defendants' position is that the letter, and plaintiff's act, raise the issue whether the parties intended a novation to occur. However, neither document relied on by defendants in any way

addresses the $25 a week agreement. The letter is concerned with benefits "accrued under the MSC Pension Plan," and there is no reference in the beneficiary form to the original agreement. Defendants do not dispute the terms of the original agreement with plaintiff, and there are no facts to show that a modification of that agreement was ever addressed by the parties. The trial court did not err in determining, as a matter of law, that there was no modification of the agreement and in entering summary judgment for plaintiff.

Affirmed.